# EXHIBIT A



March 20, 2024

**Lilly USA, LLC**

Lilly Corporate Center
Indianapolis, Indiana 46285
U.S.A.
+1.317.276.2000
www.lilly.com

*Submitted via email (Chantelle.Britton@hrsa.hhs.gov)*

Chantelle Britton
Acting Director, Office of Pharmacy Affairs
Health Resources and Services Administration
Department of Health and Human Services
5600 Fishers Boulevard
Rockville, MD 20857

**Re:   Improper Certification and Recertification of Entities Claiming 340B Eligibility as STD Funding Recipients under Subsection (a)(4)(K)**

Dear Acting Director Britton:

I write on behalf of Eli Lilly and Company to raise concerns about troubling developments in the management of the 340B Drug Pricing Program by the Health Resources and Services Administration. It has come to Lilly's attention that HRSA has certified and recertified, as 340B-eligible covered entities, numerous providers that are not eligible to participate in the 340B program, thereby enabling improper access to discounted pricing and extensive diversion of 340B drugs to non-patients.

HRSA's decisions appear to stem from a misapplication of 42 U.S.C. § 256b(a)(4)(K). That provision confers 340B eligibility on certain entities that receive federal grant "funds . . . through a State or unit of local government" for treating sexually transmitted diseases or tuberculosis. In apparent reliance on that provision, HRSA has certified and recertified entities that are *not* eligible for one or more of the following reasons: (1) They are "subgrantees" who have received funds from other covered entities, not grantees who have received funds from state or local governments; (2) they have received only in-kind contributions such as condoms, not grant "funds" (*i.e.*, cash); (3) they do not offer treatment for STDs or TB, nor for any other service within the scope of the grant under which they claim eligibility; and (4) they regularly transfer 340B drugs to non-patients, contrary to the statutory definition of "covered entity."

Certification or recertification of these entities violates the 340B statute. As detailed below, Lilly writes to request that HRSA rescind its certification of entities that do not meet the statutory criteria to qualify for 340B-discounted pricing. Lilly further asks HRSA to remove from its website its sub-regulatory guidance asserting that entities may qualify for the 340B program under Section 256b(a)(4)(K) through receipt of in-kind contributions, which is inconsistent with the 340B statute. Because the harm caused by HRSA's erroneous certification and recertification decisions is ongoing and cumulative, Lilly asks for a response to this letter by April 19, 2024.

**Background**

Last year, Lilly unwittingly provided millions of dollars of 340B price concessions to providers that are HRSA-certified as 340B covered entities based on their receipt of STD or TB grant funding, even though these entities appear to be ineligible for the program. The amounts provided have grown in recent years by a factor of four or more. The ineligibility of the entities in question is apparent from

Acting Director Britton
March 20, 2024
Page 2 of 7

reviewing entries in HRSA's covered entity database, the 340B Office of Pharmacy Affairs Information System.

One provider in particular, Sagebrush Health Services (Sagebrush), illustrates the problem. Sagebrush has 11 facilities in Nevada, Connecticut, and South Carolina.[1] Yet on OPAIS, 60 separate covered entities are marked as "participating" in the 340B program as "Subdivisions" of Sagebrush, and all of them claim covered-entity status as STD clinics under Section 256b(a)(4)(K). From their names and websites, however, they appear to provide services like immunology, gastroenterology, or rheumatology, rather than STD treatment.

Most of these supposed covered entities appear to lack a meaningful corporate relationship with Sagebrush. For example, six of them appear to be locations of the Skin and Cancer Institute (SACI), a multi-state provider with locations in Nevada, California, and Arizona.[2] On OPAIS, these SACI listings show a "grant number" associated with an STD grant award from the Centers for Disease Control and Prevention (CDC) to the Nevada Department of Health and Human Services (Nevada DHHS).[3] Under "Nature of Support," each SACI entity lists "Direct Funding (dollars received from CDC or an intermediate organization)" or "In-Kind products or services (see note below; must have been purchased with section 318 funds)." In the field labeled "Please Describe the 'in-kind' Support," each of the SACI entities lists a variation of "condoms," "marketing material," or both.

Based on its investigations, Lilly understands the relevant circumstances to be as follows. The Nevada DHHS receives funds from the CDC under an STD grant. The Nevada DHHS uses a portion of those funds to purchase condoms and marketing materials, some of which it provides as in-kind donations to various Nevada health providers, including Sagebrush. Sagebrush then transfers some of those materials to *other* for-profit entities such as the SACI entities. Those entities, as subgrantees, then apply for certification as "subdivisions" of Sagebrush. Finally, HRSA has certified—and later recertified—these entities as 340B-eligible.

The problematic nature of the SACI entities' claims of 340B eligibility is readily apparent. If these entities were receiving CDC funding *directly* from the Nevada DHHS, of course, they would presumably be listed as independent covered entities, not as "subdivisions" of Sagebrush. Nor do these providers, despite their claims of eligibility through their receipt of STD grant funds, appear to provide STD treatment services. As noted, they have other practice areas such as rheumatology. Yet HRSA has certified—and, in some cases, repeatedly recertified—these entities as eligible for 340B discounts.

This problem is not limited to Sagebrush and its supposed "subdivisions." Lilly's review of OPAIS has identified dozens of instances in which entities are registered as STD clinics based on in-kind donations—sometimes received from other covered entities—including several that are listed as "subdivisions" of a single entity to which they have no apparent relationship. These entities also do

---

[1] Sagebrush Health, Locations, https://sagebrushhealth.com/locations/.
[2] *See* Skin and Cancer Institute, Locations, https://skinandcancerinstitute.com/locations/.
[3] *See, e.g.*, 340B Office of Pharmacy Affairs, HRSA, STD89027 Sagebrush Health Services (Active), https://340bopais.hrsa.gov/cedetails/93665 (listing Grant Number NH25PS005179); *see* HHS, Strengthening STD Prevention and Control for Health Department (STD PCHD), https://taggs.hhs.gov/Detail/AwardDetail?arg_AwardNum=NH25PS005179&arg_ProgOfficeCode=143 (HHS grant-tracking page for CDC grant award number NH25PS005179).

Acting Director Britton
March 20, 2024
Page 3 of 7

not appear to treat STDs; as a result, any 340B purchases they make are being diverted outside the program to non-patients. Yet HRSA has certified and recertified such entities repeatedly.

These improper certifications harm the integrity of the 340B program and impose substantial costs on manufacturers. While Lilly does not sell products that treat STDs or TB, entities claiming eligibility as STD and TB clinics sought (and received) $3.3 million in 340B chargebacks on gross purchases of $5.8 million in 2023. The number of purported covered entities with no connection to STD or TB treatment who have obtained certification from HRSA also appears to be increasing. From 2022 to 2023, the number of STD and TB clinics purchasing Lilly products increased by over 60%, and the total amount of requested discounts increased several-fold.

**HRSA's Certification and Recertification of Certain STD and TB Clinics Is Improper**

HRSA's certification and recertification of entities like Sagebrush and its purported "subgrantees" violates the 340B statute on several grounds. To qualify for and maintain certification as a 340B-eligible covered entity under Section 256b(a)(4)(K), a provider must, at minimum: (1) receive grant funds through a state or local government, not through another covered entity; (2) offer treatment for STDs or TB; (3) receive cash funds, not in-kind contributions; and (4) furnish 340B-discounted drugs only to patients who receive such treatment.

*First*, HRSA has no statutory authority to certify "subgrantee" entities that receive grant funds from *other* grantees. Section 340B only renders eligible those entities that receive STD or TB grant funds "through a State or unit of local government." 42 U.S.C. § 256b(a)(4)(K). That provision refers to federal grants that are issued (for example) to public health agencies, which may further distribute a portion of the grant funding to local providers offering STD and TB care—that is, to grantees. The statute does not authorize such a grantee to pass on 340B eligibility even further down the chain, by transferring a portion of its *own* grant funds to other "subgrantee" providers. Yet HRSA appears to have certified numerous subgrantees, including providers that claim to be "subdivisions" of entities like Sagebrush that have obtained grant funds from state or local governments.

In addition to violating the statute's clear terms, this practice has no limiting principle or logical stopping point. It would allow a pool of STD grant funds to be transferred ad infinitum from provider to provider to provider—all of whom could declare themselves covered entities because the funds once passed, however distantly, through a state agency. The care and precision with which Section 340B identifies and defines the list of eligible covered entities underscores that Congress never intended to create such a perpetually cascading authorization structure. Nor has Congress ever empowered covered entities to unilaterally create *other* covered entities, such as by choosing providers on whom to bestow a share of their grant funds.

*Second*, HRSA lacks authority to certify entities that do not use 340B-discounted drugs to treat STDs and TB. To qualify as a covered entity by virtue of receiving funds "under" a federal STD grant, the funds must be for the "treatment of sexually transmitted diseases." 42 U.S.C. § 256b(a)(4)(K). A similar instruction exists for TB funding. *See id.* ("treatment of tuberculosis"). These provisions indicate Congress's intent that, for an entity to qualify for covered-entity status based on its receipt of funds "under" an STD or TB grant, the entity must use those funds to treat STDs or TB. Congress could not reasonably have intended for state and local governments to give federal STD or TB grant funds to providers that do *not* perform the services that the grant funds are intended to support, nor did Congress intend for such entities to receive 340B discounts for drugs not used to treat STDs or TB.

Acting Director Britton
March 20, 2024
Page 4 of 7

The history of the 340B statute supports this reading of the text. Congress enacted the 340B program as part of the Veterans Health Care Act of 1992, Pub. L. 102-585, 106 Stat. 4943. The original version of the statute covered only disproportionate share hospitals. But a draft of the bill directed HHS to study the feasibility and desirability of adding additional covered-entity categories, including entities receiving federal STD or TB funds. *See* H.R. Rep. No. 102-384, pt. 2, at 5 (1992). The relevant House Committee report stated that the bill required HHS to consider covered-entity status for "clinics providing … sexually transmitted disease treatment, or tuberculosis treatment services with Federal block grant funds." *Id.* at 13. The bill also directed HHS to study the potential inclusion within the 340B program of "entities providing treatment for sexually transmitted diseases or tuberculosis and receiving Federal funds through a State or unit of local government." *Id.* at 18-19. This proposal was ultimately adopted in Section 256b(a)(4)(K). The statutory history thus confirms that Congress intended to confer 340B eligibility *only* on entities using those funds to "provid[e] treatment for" STDs or TB. *Id.*

HRSA acknowledges this limitation in guidance on its website, which states that STD clinics participating in the 340B Program "may purchase and dispense any 340B drugs *associated with a service* for which the covered entity is responsible, including contraceptives, to that patient, *to the extent it . . . is consistent with the scope of the grant*."[4] Under that guidance, entities like Sagebrush and its associated subgrantees do not qualify for 340B-discounted pricing for Lilly's products—which are not indicated for treatment of STDs or TB—because they do not use those products to perform services within the scope of any STD or TB grant.

**Third**, HRSA cannot certify covered entities that claim 340B eligibility via receipt of in-kind contributions. The 340B statute provides that an "entity receiving *funds* under [a federal STD or TB grant] through a State or unit of local government" may qualify as a covered entity if it is certified by the Secretary and meets all other statutory requirements. 42 U.S.C. § 256b(a)(4)(K) (emphasis added). The plain meaning of "funds" is "money, often money for a specific purpose."[5] Relying on dictionary definitions, courts have similarly "define[d] 'funds' as '[a] sum of money or other liquid assets established for a specific purpose.'" *Rider v. Uphold HQ Inc.*, 657 F. Supp. 3d 491, 498 (S.D.N.Y. 2023) (quoting *Fund*, Black's Law Dictionary (11th ed. 2019)); *see United States v. Day*, 700 F.3d 713, 725 (4th Cir. 2012) (collecting definitions of "funds"). The definition in Section 256b(a)(4)(K) thus refers to entities that receive *money*, and it does not encompass entities that receive goods or services.

This plain meaning is reinforced by the fact that the provision governing federal STD funds, *id.* § 247c(b)-(d), itself authorizes States and governmental units to receive "grants," a term that similarly refers only to money: A grant is "an amount of money given especially by the government to a person or organization for a special purpose."[6] This provision also expressly distinguishes "grants" from "supplies or equipment," by authorizing the Secretary to "reduce [a] grant by the fair market value of any supplies or equipment furnished to such recipient." *Id.* § 247c(e)(4). In allowing the Secretary to "reduce [a] grant by the fair market value of any supplies or equipment," the

---

[4] 340B FAQs, HRSA, https://www.hrsa.gov/opa/faqs (emphases added).
[5] Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/funds. The word is similarly limited to a monetary meaning if "funds" is taken to be the plural of "fund." *See* Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/fund.
[6] Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/grant.

Acting Director Britton
March 20, 2024
Page 5 of 7

provision makes clear that the monetary "grant" is distinct from those "supplies or equipment."[7] Several public-health grant provisions adjacent to the 340B statute also expressly refer to "in kind" contributions such as "equipment," *see, e.g.*, 42 U.S.C. §§ 254c-7(a)(4)(B), 254r(b)(3), 254c-19(f), 256g(d), showing that Congress "knows how to" include in-kind contributions when it wants to, *Pereida v. Wilkinson*, 592 U.S. 224, 232 (2021).

Despite the 340B statute's plain language and context, HRSA has posted guidance to its website that purports to recognize 340B eligibility via receipt of in-kind contributions, including "goods and services."[8] This guidance does not analyze Section 256b(a)(4)(K) or explain how an entity's receipt of in-kind contributions can be considered "receiving funds." In any event, Section 340B does not authorize the agency to engage in rulemaking on this issue. *See PhRMA v. HHS*, 43 F. Supp. 3d 28, 41-43 (D.D.C. 2014); *PhRMA v. HHS*, 138 F. Supp. 3d 31, 48 (D.D.C. 2015). HRSA has also offered no reasoning to support its view, which would preclude the application of judicial deference. HRSA's guidance on covered-entity eligibility based on the receipt of in-kind contributions thus conflicts with the 340B statute and should be withdrawn.

**Fourth**, HRSA may not recertify entities that have transferred 340B-discounted drugs to individuals who do not receive STD or TB treatments and thus are not the entities' "patients" under the statute. Under Section 340B, "the term 'covered entity' means," among other things, "an entity that meets the requirements described in paragraph (5)." 42 U.S.C. § 256b(a)(4). The referenced paragraph includes the 340B statute's anti-diversion requirement, which provides that covered entities must not "resell or otherwise transfer the drug to a person who is not *a patient of the entity*." *Id.* § 256b(a)(5)(B) (emphasis added). An entity that engages in diversion of 340B drugs to non-patients thus no longer "meets the requirements described in paragraph (5)," and no longer qualifies as a covered entity eligible for recertification.

HRSA's guidance states that an individual is a patient of a federal STD or TB grant recipient "only if . . . the individual receives a health care service or range of services from the covered entity which is consistent with the service or range of services for which grant funding … has been provided to the entity." 61 Fed. Reg. 55,156, 55,157-58 (Oct. 24, 1996). Guidance on HRSA's website similarly reflects that definition, stating that "STD (318 grantee) clinics that participate in the 340B Program may purchase 340B drugs (including prescribed contraceptives), for grantee patients *that meet the patient definition criteria*," and that an STD clinic "may purchase and dispense any 340B drugs associated with a service for which the covered entity is responsible, including contraceptives, to that patient, *to the extent it aligns with [the] patient definition and is consistent with the scope of the grant*."[9] Therefore, when a self-identified STD or TB clinic transfers 340B-discounted drugs to individuals who do *not* receive STD or TB treatment—*i.e.*, to non-patients—it violates the anti-diversion requirement and renders that entity ineligible for future participation in the 340B program.

Indeed, HRSA has a statutory obligation to "evaluate the validity of subsequent [*i.e.*, post-certification] purchases by [certified] entities" as part of any "recertification." 42 U.S.C.

---

[7] The federal TB grant provision contains similar language. *See* 42 U.S.C. § 247b-6(e)(2); *see also id.* § 247b-6(d)(3)(A), (e)(1).

[8] 340B FAQs, HRSA ("Qualifying in-kind contributions must be paid for by section 317 or 318 grant funds to qualify a site as 340B eligible. In-kind contributions may be in the form of real property, equipment, supplies and other expendable property, and goods and services directly benefiting and specifically identifiable to the project or program."), https://www.hrsa.gov/opa/faqs.

[9] *Id.* (emphasis added).

Acting Director Britton
March 20, 2024
Page 6 of 7

§ 256b(a)(7)(E). HRSA thus must confirm that each covered entity's purchases remain "valid"—*i.e.*, compliant with all eligibility criteria, including the anti-diversion provision. The statute does not allow HRSA to recertify entities, like Sagebrush and its affiliated subgrantees, that routinely provide 340B drugs to patients in connection with care outside the scope of their STD grants. And if HRSA has made a decision not to examine whether covered entities applying for recertification are engaged in diversion, then that decision would also be unlawful.

**Conclusion**

For the reasons stated, Lilly respectfully requests that HRSA immediately rescind its certification of Sagebrush and its affiliated subgrantees:

| **340B ID** | **Sagebrush Entity** |
|---|---|
| STD06042 | Rheumatology Specialists of Connecticut |
| STD06488 | Southbury Clinic - CT |
| STD06489 | Southington Clinic - CT |
| STD064891 | Southington PrEP Clinic |
| STD064892 | Connecticut Home Infusions |
| STD068107 | Danbury Rd Clinic |
| STD89011 | Henderson Satellite Clinic - NKDHC |
| STD89012 | Dr. S. Steven Kim, MD - MDVIP |
| STD890141 | Doctors Center at Redrock Warm Springs Clinic - Desert Springs |
| STD890142 | Forte Family Practice Warm Springs Clinic - Desert Springs |
| STD890181 | Total Family Care Specialists - Desert Springs |
| STD89027 | Mesquite SACI |
| STD89032 | North Las Vegas Clinic - KSOSN |
| STD890481 | Pahrump SACI |
| STD890482 | Pahrump Clinic - KSOSN |
| STD89052 | Southeast Clinic - NKDHC |
| STD890521 | Henderson SACI |
| STD890523 | NV Family Care Center |
| STD890524 | Sun Medical Services - Desert Springs |
| STD890525 | Gautham G. Reddy MD - Desert Springs |
| STD890526 | Anthem Medical Center - Desert Springs |
| STD890527 | Siena Hills Primary Care - Desert Springs |
| STD890741 | Henderson Clinic - KSOSN |
| STD891031 | Fort Family Practice Rainbow Clinic- Desert Springs |
| STD891045 | ProCare Medical Group Nellis Clinic- Desert Springs |
| STD891061 | Shadow Lane Neurology |
| STD891062 | Northeast Clinic - NKDHC |
| STD891063 | Rancho clinic - KSOSN |
| STD891132 | Battleborn Health Care |
| STD89117 | Body and Mind Health Partners- Desert Springs |
| STD89118 | Rainbow Rheumatology |
| STD891182 | Southwest Clinic - NKDHC |
| STD891183 | ProCare Medical Group Rainbow Clinic- Desert Springs |
| STD891191 | A-P Medical Group |
| STD89123 | Eastern Rheumatology |
| STD891232 | Green Valley Primary Care - Desert Springs |

Acting Director Britton
March 20, 2024
Page 7 of 7

| **340B ID** | **Sagebrush Entity** |
|---|---|
| STD891281 | Fire Mesa ID |
| STD891283 | Northwest Clinic - NKDHC |
| STD891284 | Fire Mesa Rheumatology |
| STD891285 | Box Canyon SACI |
| STD891286 | Dr. Ann Wierman, MD |
| STD891287 | Nevada Home Infusions |
| STD891288 | Doctors Center at Redrock Tenaya Way Clinic - Desert Springs |
| STD891289 | Irfan Tahir MD - Desert Springs |
| STD89129 | Pointe Plaza Clinic - KSOSN |
| STD891291 | Blue Point Medical Group - Desert Springs |
| STD891292 | Fort Family Practice Cheyenne Clinic- Desert Springs |
| STD89144 | Summerlin Clinic - KSOSN |
| STD89148 | Fort Apache SACI |
| STD891482 | Southern Hills Clinic - KSOSN |
| STD891483 | LifeCare Clinic |
| STD891484 | Doctors Center at Redrock Apache Clinic - Desert Springs |
| STD891485 | ProCare Medical Group Fort Apache Clinic- Desert Springs |
| STD89149 | Hummingbird Medical Group |
| STD891491 | Centennial SACI |
| STD891493 | Centennial Hills Clinic - KSOSN |
| STD891691 | Central Clinic - NKDHC |
| STD89178 | ProCare Medical Group Blue Diamond Clinic- Desert Springs |
| STD893012 | Sanderling Renal Services-Ely Clinic |
| STD89511 | Reno Clinic |

Lilly also asks HRSA to rescind its certification of any other "subgrantee"; any entity claiming eligibility as an STD or TB clinic that does not provide those services or use 340B drugs to treat those conditions; any entity that claims eligibility by receiving only in-kind contributions, rather than funds; and any STD or TB funding grantee that diverts 340B drugs to non-patients by using such drugs to perform services outside the scope of their grant. Lilly further requests that HRSA immediately withdraw its online guidance purporting to authorize 340B eligibility via in-kind contributions.

We appreciate your attention to these important matters and look forward to your prompt response. Lilly would also welcome the opportunity to provide additional information about the program abuses that it has observed and to meet with HRSA to further discuss these issues with the agency.

Best regards,

Derek L. Asay
Senior Vice President – Government Strategy & Federal Accounts