UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMGEN INC., et. al.,<br><br>       Plaintiffs,<br><br>    v.<br><br>ROBERT F. KENNEDY, JR., Secretary of<br>Health and Human Services, et al,<br><br>       Defendants. | Civil Action No. 24-3571 (JEB) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS'
<u>MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

Table of Contents ................................................................................................................. i

Table of Authorities ............................................................................................................ ii

Background ......................................................................................................................... 1

    I.      Statutory and Guidance Background. ................................................................... 1

          A.      340B Program ........................................................................................ 1

          B.      340B Program Patient Requirements ...................................................... 3

          C.      340B Registration and Recertification of Sexually Transmitted Disease Grantees ................................................................................................. 5

Legal Standard ................................................................................................................... 8

Argument ........................................................................................................................... 9

    I.      HRSA Established Appropriate Certification Procedures. ................................... 9

    II.     HRSA Reasonably Determined In Kind Contributions Meet the Threshold Eligibility Requirements. ..................................................................................... 13

    III.   Plaintiffs Attempt to Limit 340B Purchases to the So-Called Scope of the Grant is Contrary to the Purpose of the 340B Statute. ...................................................... 14

    IV.   Plaintiffs' Drug Diversion Concerns Are Speculative. ........................................ 17

    V.    HRSA Does Not Certify Subgrantees. ................................................................. 19

Conclusion ....................................................................................................................... 20

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Bioscience, Inc. v. Thompson*,
269 F.3d 1077 (D.C. Cir. 2001) ................................................................................. 8
*Am. Great Lakes Ports Ass'n v. Schultz*,
962 F.3d 510 (D.C. Cir. 2020) ................................................................................. 12
*Am. Hosp. Ass'n v. Dep't of Health & Human Servs.*, Civ. A.,
No. 18-2112 (JDB), 2018 U.S. Dist. LEXIS 187624 (D.D.C. Nov. 2, 2018) ........... 8
*Bowman Transp. Inc. v. Arkansas-Best Freight Sys., Inc.*,
419 U.S. 281, (1974) ................................................................................................ 11
*City of Tacoma v. FERC*,
460 F.3d 53 (D.C. Cir. 2006) ................................................................................... 12
*Hight v. U.S. Dep't of Homeland Sec.*,
694 F. Supp. 3d 127 (D.D.C. 2023) ............................................................................ 8
*Lomak Petroleum, Inc. v. FERC*,
206 F.3d 1193 (D.C. Cir. 2000) ................................................................................. 9
*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) ........................................................................................... 10, 14
*Marshall Cnty. Health Care Auth. v. Shalala*,
988 F.2d 1221 (D.C. Cir. 1993) ............................................................................. 8, 9
*Mills v. Green*,
159 U.S. 651 (1895) ................................................................................................. 16
*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29, (1983) ............................................................................................ 11, 13
*Sierra Club v. Jackson*,
648 F.3d 848 (D.C. Cir. 2011) ................................................................................. 16
*Skidmore v. Swift & Co.*,
323 U.S. 134 (1944) ................................................................................................. 14

**Statutes**

5 U.S.C. § 706 ................................................................................................................. 9
42 U.S.C. § 247c ............................................................................................................ 5
42 U.S.C. § 247c(e)(4) ................................................................................................. 14
42 U.S.C. § 256b ............................................................................................................ 1
42 U.S.C. § 256b(a)(4) ............................................................................................... 3, 4
42 U.S.C. § 256b(a)(4)(K) ..................................................................................... 5, 13, 14
42 U.S.C. § 256b(a)(5)(A) ............................................................................................ 2
42 U.S.C. § 256b(a)(5)(B) .................................................................................... 2, 3, 17
42 U.S.C. § 256b(a)(7) ...................................................................................... 5, 6, 17
42 U.S.C. § 256b(a)(7)(A) ................................................................................ 10, 14, 15
42 U.S.C. § 256b(a)(7)(B) ................................................................................ 6, 11, 17
42 U.S.C. § 256b(a)(7)(D) ....................................................................................... 6, 11

42 U.S.C. § 256b(a)(7)(E)........................................................................................... 6
42 U.S.C. § 256b(a)(8) .................................................................................... 6, 7, 9, 10

**Regulations**

2 C.F.R. § 200.1 ....................................................................................................... 14
2 C.F.R. § 200.306(b) .............................................................................................. 14
42 C.F.R. § 10.11(b) .................................................................................................. 2

**Other Authorities**

61 Fed. Reg. 65 ........................................................................................................ 17

Robert F. Kennedy, Jr., in his official capacity as Secretary of Health and Human Services, the Department of Health and Human Services (the "Department"), the Health Resources and Services Administration (the "Administration" or "HRSA"), and its Administrator (collectively, "Defendants"), through undersigned counsel, respectfully submit this memorandum in support of their cross motion for summary judgment and in opposition to Plaintiffs' motion for summary judgment ("Pls.' Mot.," ECF No. 35).

This case is a collective strategy by a group of large and highly profitable prescription drug manufacturers to unilaterally upend the long-settled operation of the statutory 340B program that provides discounted medication to healthcare providers and their patients. For the reasons outlined below, summary judgment should be entered in Defendants' favor because the administrative record shows that Defendants established appropriate certification procedures and the Defendants' certification of the Sagebrush entities complied with the 340B statutory requirements and the Administrative Procedure Act ("APA").

## BACKGROUND

### I.    Statutory and Guidance Background.

#### A.    340B Program

In 1992, Congress established the 340B Drug Pricing Program ("340B Program"), whereby certain statutorily defined healthcare providers ("covered entities") purchase certain drugs ("covered outpatient drugs") at a discount from participating drug manufacturers. 42 U.S.C. § 256b. The manufacturers participate in the program because it is a condition for their products to be reimbursable under Medicare Part B and Medicaid. The statute defines the parameters of eligible providers in section 256b(a)(4).

Section 256b(a)(4) defines the "covered entities" eligible to participate in the Program. It includes federally-qualified health centers ("FQHCs"), recipients of funds related to the treatment

of sexually transmitted diseases, AIDS drug purchasing assistance programs, black lung clinics, disproportionate share hospitals, and others. Since its inception in 1992, the 340B Program has proven to be a critical tool for covered entities to "stretch scarce Federal resources as far as possible, reaching more eligible patients and providing more comprehensive services," H.R. Rep. 102-384(II) (Sept. 22, 1992), by allowing covered entities to purchase drugs at reduced prices. *See* 42 C.F.R. § 10.11(b).

In addition to the basic parameters of eligibility set forth in section 256b(a)(4), the statute also imposes certain obligations and restrictions on participating covered entities. First, covered entities can only resell or otherwise transfer the discount drugs to their patients. *See* 42 U.S.C. § 256b(a)(5)(B). Second, the covered entities must ensure that drugmakers are not subject to a "duplicate discount" for covered outpatient drugs. *See* 42 U.S.C. § 256b(a)(5)(A). These are known as the prohibitions on "diversion" and "duplicate discounting," respectively.

The primary stakeholders in the 340B Program are drug manufacturers, on the one hand, and covered entities, on the other. Their interests are often in tension: manufacturers must participate in the Program if they voluntarily participate in Medicaid and Medicare Part B to obtain reimbursement for their products, thus they naturally want to limit the volume of 340B discounts and the number of covered entities qualified for the Program. And covered entities want the opposite. It is in this context that HRSA has sought to bring clarity to Program participants by issuing guidance on HRSA's interpretation of the statutory requirements and, accordingly, how HRSA administers the Program. Pertinent to this litigation, one of these areas where HRSA has issued guidance concerns the manner in which covered entities qualify for inclusion in the Program. Another of these areas is the 340B statutory requirement that 340B purchased drugs can only be provided to covered entities' patients.

### B.    340B Program Patient Requirements

Section 256b(a)(5) imposes "requirements for covered entities." Section 256b(a)(5)(B), titled "Prohibiting the resale of drugs," states "[w]ith respect to any covered outpatient drug that is subject to an agreement under this subsection, a covered entity shall not resell or otherwise transfer the drug to a person who is not a patient of the entity." 42 U.S.C. § 256b(a)(5)(B). This is often called the prohibition on diversion. The 340B statute does not further define the term "patient."

In August 1995, HRSA issued a Federal Register notice that described its proposed approach to the statutory prohibition on diversion. 60 Fed. Reg. 39,762 (Aug. 3, 1995). The guidance was finalized in 1996. See AR000004-000006. The guidance sought to "explain how the Department intends to administer the 340B program" by "clarifying the meaning given by the Department to particular words of phrases." *Id.* at 55,156. The guidance merely "explain[ed] the statutory language"—it was not meant to "create … new law [or] new rights or duties" and in HRSA's view it did not "exceed the purpose of 340B or conflict with any of its provisions." *Id.* Because the prohibition on diversion turns on who, exactly, is a "patient of the entity," this guidance became known as the "patient definition" or "patient-eligibility" guidelines.

HRSA interpreted the statute to mean that, in essence, the covered entity had to be responsible for the medical care in question: the covered entity had to maintain records of the individual's care, and the care provider had to be employed by the covered entity or else have a contractual or other arrangement such that responsibility for the care provided remained with the covered entity. *See id.* at 55,157-58. As is inevitable in this context, commenters had different reactions to HRSA's interpretation of the phrase "patient of the entity." *See, e.g.*, A.R. 44, 46, 48 (commenters expressing support); *id.* at 50 (arguing it is too narrow); *id.* at 55, 58, 74 (arguing it is too broad). Ultimately, HRSA's commonsense understanding of the statutory language sought to account for the multitude of different contexts and covered entities included in the Program, *see* 42 U.S.C. § 256b(a)(4) (comprising

- 3 -

15 subparagraphs delineating 22 different types of covered entities); *See* AR000005, while outlining reasonable principles that would effectuate the statutory limitation on each covered entity to only use the Program for individuals who truly were "patient[s] of the entity." The 1996 guidance remains in effect to this day.

More specifically, the 1996 guidance states that an individual is a 340B patient for purposes of the 340B statute if:

1. the covered entity has established a relationship with the individual, such that the covered entity maintains records of the individual's health care; and
2. the individual receives health care services from a health care professional who is either employed by the covered entity or provides health care under contractual or other arrangements (e.g. referral for consultation) such that responsibility for the care provided remains with the covered entity; and
3. the individual receives a health care service or range of services from the covered entity which is consistent with the service or range of services for which grant funding . . . has been provided to the entity.

*See id.* The third part of the definition above holds that the 340B statute requires that, for covered entities qualifying for the Program through receipt of a grant, an individual receives a health care service from the covered entity which is consistent with the range of services for which the grant has been provided to the entity. However, once an individual qualifies as a 340B patient, the guidance makes clear that covered entities are not limited in the type of 340B drugs provided to that patient:

> *Comment:* Covered entities should be required to restrict purchases to drug products that are directly related to the provision of services for which Federal funding has been provided.
> *Response:* We do not consider a limitation on which drug products a covered entity may purchase to be a reasonable component of the definition of covered entity ''patient.'' To the extent that purchasing certain drugs would contravene a Federal or State law or certain PHS grant principles (and this information is brought to the Department's attention), the Department reserves the right to take such action as it deems appropriate.

*See* AR000004.

**C.      340B Registration and Recertification of Sexually Transmitted Disease Grantees**

Under the 340B Program, one category of an eligible covered entity is "[a]n entity receiving funds under section 247c of this title (relating to treatment of sexually transmitted diseases) . . . through a State or unit of local government, but only if the entity is certified by the Secretary pursuant to paragraph [(a)](7)." 42 U.S.C. § 256b(a)(4)(K). Section 247c, in turn, allows the Secretary to provide assistance to States and local government units for the prevention and control of sexually transmitted diseases. 42 U.S.C. § 247c. Thus, in order for an entity to qualify as a covered entity under section 256b(a)(4)(K), that entity must receive federal funds that were provided to the State or local government (i.e., "through a State or unit of local government") for the prevention and control of sexually transmitted diseases. Section 247c is codified in Section 318 of the Public Health Service Act, therefore, these entities are commonly referred to as "Section 318 grantees." Currently, there are more than 4,700 active Section 318 grantees registered in the 340B Program, and they accounted for more than $2.2 billion in 340B sales in 2024. *See* Declaration of Chantelle Britton, Director of the Office of Pharmacy Affairs ("Britton Decl.") ¶ 5. These sales accounted for less than three percent of overall 340B sales for 2024. *See* https://www.hrsa.gov/opa/updates/2024-340b-covered-entity-purchases.

The 340B statute requires the Secretary to develop and implement a process for the certification of two types of covered entities: entities qualifying under section 256b(a)(4)(J), relating to certain types of HIV/AIDS grantees, and entities qualifying under section 256b(a)(4)(K), relating to sexually transmitted disease and tuberculosis grantees. 42 U.S.C. § 256b(a)(7). The certification process includes a requirement that an entity applying for certification submit information concerning "the amount such entity expended for covered outpatient drugs in the preceding year so as to assist the Secretary in evaluating the validity of the entity's subsequent

purchases of covered outpatient drugs at discounted prices." 42 U.S.C. § 256b(a)(7)(B). The statute requires that the certification process include procedures through which each State "prepare and submit a report to the Secretary that contains a list of entities" subject to the certification requirement. 42 U.S.C. § 256b(a)(7)(D). The statute also requires that certification criteria be made available to drug manufacturers and a recertification process "on a not more frequent than annual basis" to require covered entities to submit information "to permit the Secretary to evaluate the validity of subsequent purchases by such entities." 42 U.S.C. § 256b(a)(7)(E).

When the Program first began, by letter dated April 15, 1993, HRSA informed drug manufacturers of the mechanism for certification and the criteria for certification under section 256b(a)(7). *See* AR 000009-000016. On May 7, 1993, HRSA published this same mechanism as well as the criteria for selection in the Federal Register. *See* Guidance Regarding Section 602 of the Veterans Health Care Act of 1992; Limitation on Prices of Drugs Purchased by Covered Entities, AR000017-000021. The criteria for eligibility listed (1) state certification that the entity receives grant funds in one of the eligible categories; and (2) information regarding the amount the entity expended for outpatient drugs in the preceding fiscal year. *See* AR000018. The Federal Register notice indicates that States were asked to return certification letters regarding the receipt of qualifying grant funds and that the relevant HHS grant program directors were asked to estimate the amount of outpatient drug purchases from the preceding year. *Id*.

Over time, HRSA adjusted the certification process under 42 U.S.C. § 256b(a)(7). Congress instructed HRSA to establish a "prime vendor program" through which covered entities may enter into contracts with the Prime Vendor for the distribution of covered outpatient drugs. 42 U.S.C. § 256b(a)(8). Since 2004, HRSA has contracted with Apexus, Inc., to act as the Prime Vendor. *See* Britton Decl. ¶ 11. The Prime Vendor provides drug distribution and price negotiation

services to covered entities. *See id*. The Prime Vendor provides HRSA the amount each covered entity expends on a quarterly basis on covered outpatient drugs. *See id*. This information is more reliable than estimates provided by HHS grant program directors or States as it is based on actual sales. *Id*. HRSA does not currently request information from covered entities or States regarding the amount the covered entity expended for covered outpatient drugs in the preceding year. *Id*. ¶ 12.

When a Section 318 grantee first applies for entry to the 340B Program, HRSA will send a request to the applicable State sexually transmitted disease program manager requesting that the State confirm the Section 318 grantee receives 318 funding. *See* Britton Decl. ¶ 7. Prior to registration, Section 318 grantees are also required to attest to the following:

(1)    all information listed on the 340B OPAIS for the covered entity will be complete, accurate, and correct;

(2)    the covered entity will meet all 340B Program eligibility requirements of Section 340B of the Public Health Service Act;

(3)    the covered entity will comply with all requirements of Section 340B of the Public Health Service Act and any accompanying regulations including, but not limited to, the prohibition against duplicate discounts/rebates and diversion (section 340B(a)(5)(A) and (B) of the Public Health Service Act;

(4)    the covered entity will maintain auditable records pertaining to compliance with the requirements described in paragraph (3) above, pursuant to section 340B(a)(5)(C) of the Public Health Service Act;

(5)    the covered entity acknowledges its responsibility to contact OPA as soon as possible if there is any change in 340B eligibility and/or breach by the covered entity of any of the foregoing; and

(6)     the covered entity acknowledges that if there is a breach of the requirements described in paragraph (3) that the covered entity may be liable to the manufacturer of the covered outpatient drug that is the subject of the violation, and, depending upon the circumstances, may be subject to removal from the list of eligible 340B entities.

*See* Britton Decl. ¶ 8.  All 340B Program covered entities, including those qualifying as Section 318 grantees, are required to recertify their eligibility on a yearly basis and attest to items in the list above. *See* 42 U.S.C. § 256b(d)(2)(B)(i). *See also* Britton Decl. ¶ 8; <u>Recertification</u>

Requirement, https://www.hrsa.gov/opa/recertification (last visited April 23, 2026) (explaining annual recertification is a requirement for continued 340B Program participation).

At registration, Section 318 grantees must specify whether they receive direct or in-kind support. *See* Britton Decl. ¶ 6. In 2013, HRSA posted a response to a frequently asked question on its website concerning the qualification of entities receiving in-kind support. AR 000028. HRSA stated that an entity receiving in-kind contributions through section 318 of the Public Health Service Act could qualify for the 340B Program. *Id*. The frequently asked question stated that in-kind contributions could be in the form of real property, equipment, supplies, and other expendable property, and goods and services directly benefiting and specifically identifiable to the project or program. *Id*.

## LEGAL STANDARD

Summary judgment is "the mechanism for deciding whether as a matter of law the agency action is supported by the administrative record and is otherwise consistent with the [Administrative Procedure Act] standard of review." *Hight v. Dep't of Homeland Sec.*, 694 F. Supp. 3d 127, 136 (D.D.C. 2023) (internal quotations and citation omitted); *see also Am. Hosp. Ass'n v. Dep't of Health & Human Servs.*, Civ. A. No. 18-2112 (JDB), 2018 U.S. Dist. LEXIS 187624, at *7 (D.D.C. Nov. 2, 2018) ("[I]n APA cases early summary judgment motions are often appropriate, as the entire case on review is a question of law, and only a question of law." (internal quotation marks and citation omitted).

When assessing a motion for summary judgment in an APA case, however, "the district judge sits as an appellate tribunal." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). In such cases the complaint "actually presents no factual allegations, but rather only arguments about the legal conclusion to be drawn about the agency action." *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993). Therefore, "[t]he entire case on

review is a question of law, and only a question of law." *Id*. The Court's review is based on the agency record and limited to determining whether the agency acted arbitrarily or capriciously or in violation of another standard set forth in the APA. *See* 5 U.S.C. § 706. The party challenging final agency action bears the burden of demonstrating a violation of the APA. *Lomak Petroleum, Inc. v. FERC*, 206 F.3d 1193, 1198 (D.C. Cir. 2000).

## ARGUMENT

### I.    **HRSA Established Appropriate Certification Procedures.**

Plaintiffs allege that HRSA "never developed a process for certification consistent with the statut[e]" or "made available to manufacturers its criteria for certification." Pls.' Mot. for Summ J. (ECF No. 35-1)) at 6. Plaintiffs' claims are misplaced. The records shows that in 1993, HRSA communicated its certification process to manufacturers. *See* AR 000007-00008. This process required internal program directors to compile a list of covered entities to include each entity's estimated outpatient drug purchases for the preceding year, and for the program director to verify this information with the relevant State department of health. *Id*. at 000008. If the program directors were unable to complete this process, the State health departments were tasked with compiling the list of covered entities and past drug purchases. *Id*. This certification process was also published in the federal register. *See* AR000017-000021.

Certification procedures have since been modified to the process in place today, where HRSA relies on a vendor to provide the relevant historical drug purchases. *See* Britton Decl ¶ 11; *see also* 42 U.S.C. § 256b(a)(8). Each quarter, OPA will send a list of entities applying for entry into the 340B Program as Section 318 grantees to each respective state. Britton Decl. ¶ 7. *See e.g.,* AR 13441-42, 13515-19, 13521, 13558-59, 13632-13635, 13711-14, 13715-736, 13789-90, 13830-31, 13870-77, 13971-72, 14026-27. Each state is requested to confirm that the entities on the list are receiving Section 318 funds. *Id*. Entities are not admitted to the Program until the state

confirms eligibility. *Id*. Stakeholders may see the list of covered entities at any time via the internet and the Office of Pharmacy Affairs database named Office of Pharmacy Affairs Information System ("OPAIS"). *See* AR000015; *see also* AR012636-012681.   And HRSA's process of certification and recertification through its OPAIS system, which requires covered entities seeking to participate in the 340B Program pursuant to section 256b(a)(4)(K) to provide the name, address, federal employer identification number, authorizing official and primary contact, 318 funding grant number, Notice of Funding Opportunity Number, the nature of support received (dollars received from Center for Disease Control or an intermediate organization, or in-kind products or services purchased with section 318 funds), and the time period that the section 318 funding or in-kind support were received. *See* Britton Decl. ¶¶ 5-6.  This certification process requires the covered entity to attest that the information entered in OPAIS is correct, accurate, complete, and complies with 340B. *See* Britton Decl. ¶ 6.

The Secretary of the Department of Health and Human Services has broad authority to "develop and implement a process for the certification of [covered] entities[.] 42 U.S.C. § 256b(a)(7)(A). "When the best reading of a statute is that it delegates discretionary authority to an agency, the role of the reviewing court under the APA is, as always, to independently interpret the statute and effectuate the will of Congress subject to constitutional limits." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024). HRSA provided its certification process to manufacturers in 1993, and manufacturers have digital access to the modern process in place today. The certification and recertification process via OPAIS satisfies this statutory authority that Congress delegated to the Secretary to establish a certification process and to make that process available to drug manufacturers.

- 10 -

HRSA acknowledges that it does not require State health departments to compile a list of entities receiving Section 318 funds. *See* 42 U.S.C. § 256b(a)(7)(D). Instead, every quarter HRSA compiles a list of entities applying to the 340B Program as a recipient of Section 318 funds, sends this list to the respective state to verify, and only admits those Section 318 entities who have been verified by the state. Britton Decl. ¶ 7. *See e.g.,* AR 13441-42, 13515-19, 13521, 13558-59, 13632-13635, 13711-14, 13715-736, 13789-90, 13830-31, 13870-77, 13971-72, 14026-27.   HRSA further states that it no longer requires covered entities to "submit information to the Secretary concerning the amount such entity expended for covered outpatient drugs in the preceding year[.]" 42 U.S.C. § 256b(a)(7)(B). Instead, HRSA uses a vendor to collect a covered entity's outpatient drug expenditures to assist the Secretary in evaluating the validity of future outpatient drugs purchased at 340B discounted prices. *See* Britton Decl. ¶ 11. And when HRSA noticed a "significant increase in 340B purchases" for certain Sagebrush sites, it undertook a compliance review to investigate the information Sagebrush attested to during certification. *See* AR000131-000135. HRSA did not neglect its statutory duties, instead HRSA found more efficient and reliable ways to compile a list of covered entities by state and collect relevant historical purchase of 340 discount drugs that still meets the intent of the statutory requirements.

HRSA's certification process is neither arbitrary nor capricious. Arbitrary and capricious review is "narrow." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, (1983). Courts look to whether "the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Bowman Transp. Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285, (1974). Here, it is reasonable for HRSA to allow covered entities to input the covered healthcare site and the related award information in OPAIS and attest that the information is accurate and correct.  HRSA has no reason to believe that

entities participating in a government program would lie or commit fraud to obtain program benefits. Moreover, HRSA maintained the ability to and did conduct program compliance checks. *See* AR00131-00133. HRSA did not blindly adopt the conclusions from Sagebrush as their own. *See* Pls.' Mot. (ECF No. 35-1) at 43 (quoting *City of Tacoma v. FERC*, 460 F.3d 53, 76 (D.C. Cir. 2006)).  HRSA's compliance check removed more than forty Sagebrush sites from the 340B program and subjected HRSA to protracted litigation. HRSA's method for compiling a list of covered entities and collecting historical 340B purchases is also reasonable. There is nothing in the record that calls into question the accuracy of HRSA's methods for collecting this data. Plaintiffs may disagree with the method HRSA used to collect the statutorily required information, but Plaintiffs cannot in good faith challenge the accuracy of the information HRSA collects through its chosen method.

Should this Court determine HRSA went outside of the boundaries created by Congress, HRSA respectfully requests the Court remand the certifications of the Sagebrush sites to HRSA instead of vacatur. Although vacatur is a normal remedy under the APA, a court may remand the agency action in question upon consideration of the seriousness of the agency's deficiencies and the likely disruptive consequences of vacatur. *See Am. Great Lakes Ports Ass'n v. Schultz*, 962 F.3d 510 (D.C. Cir. 2020). HRSA's process for certifying covered entities is not seriously deficient. The fact that Plaintiff only challenges the certification of one healthcare entity out of the thousands of covered entities that HRSA certifies demonstrates the efficiency of the current certification and recertification process. Most important, more than 4,942 entities receiving 318 funds for the treatment of sexually transmitted diseases participate in the 340B program. *See* Britton Decl. ¶ 3. Vacating the current certification process would force Sagebrush and other healthcare entities that provide services to vulnerable communities out of the 340B program. *See*

Unopposed Mot. for Intervene by Comm. Care Resources of Florida (ECF No. 23-1) at 24. Such disruptive consequences would upend the 340B program with respect to healthcare providers that deliver much needed preventative healthcare services.

## II.    HRSA Reasonably Determined In Kind Contributions Meet the Threshold Eligibility Requirements.

The 340B program limits eligibility to participate in the program to covered "entit[ies] receiving funds under a qualifying funding stream. 42 U.S.C. § 256b(a)(4)(K). Here, the parties agree that this term establishes a threshold requirement for participation in the 340B program. Where the parties disagree is over the meaning of funds. Relying on the definition of funds from the Cambridge Dictionary, Plaintiffs argue the plain meaning of funds is money. *See* Pls.' Mot. (ECF No. 35-1) at 39-40. Tellingly, Plaintiffs do not refer to the 340B statute for the plain meaning of funds because the statute does not define this term. Plaintiffs also refer to Black's Law Dictionary to support its definition of funds. *See id.* at 39. However, Black's Law Dictionary defines fund as "[a] sum of money or other liquid assets established for a specific purpose." FUND, Black's Law Dictionary (12th ed. 2024). Merrium Webster also defines fund as "a sum or money or other resources". https://www.merriam-webster.com/dictionary/fund (last visited Apr. 17, 2026). Likewise, the American Heritage Dictionary also defines fund as "a sum of money or other resources        ser        aside        for        a        specific        purpose." https://www.ahdictionary.com/word/search.html?q=fund (last visited Apr. 17, 2026). These definitions are consistent with HRSA's long held interpretation of funds to include in-kind contributions in the form of real property, equipment, supplies, and other expendable goods or property paid for by 317 or 318 funds. *See* FAQs AR000027. Stakeholders, i.e., covered entities and State healthcare departments, rely on HRSA's interpretation to participate in the 340B program. Courts may look to "those responsible for implementing particular statutes" when

determining the meaning of statutory provisions. *See Loper Bright Enterprises*, 603 U.S. at 394 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). HRSA's interpretation of funds is reasonable and not contrary to any law.

Plaintiffs' reliance on 42 U.S.C. § 247c(e)(4) to attempt to define the term "grant" falls flat because this statute likewise does not define the term grant. *See* 42 U.S.C. § 247c(e)(4). If the Court must look to authority for the definition of grant, the uniform guidance for grants, which was adopted by  the Department of Health and Human Services' r establishes that a grant is "legal instrument of financial assistance" that "[i]s used to enter into  relationship, the principal purpose of which is to transfer **anything of value.**" 2 C.F.R. § 200.1 (emphasis added)). And for federal awards funds includes "cash third-party in-kind contributions, and also including funds committed by the recipient, subrecipient, or third parties." 2 C.F.R. § 200.306(b).

At bottom, HRSA has interpreted funds to include in-kind contributions since 2013, and this interpretation is reasonable and not contrary to law.

III.    **Plaintiffs Attempt to Limit 340B Purchases to the So-Called Scope of the Grant is Contrary to the Purpose of the 340B Statute.**

Using the terms in section 256b(a)(4)(K) that defines a type of covered entity, here entities that prevent and treat STDs, Plaintiffs argue that those entities can only purchase 340B drugs that relate to STD treatment or prevention. *See* Pls.' Mot. (ECF No. 35-1) at 30-32. Plaintiffs' argument is not supported by the statute. Section 256b(a)(4)(K) does not contain any such limitation on the types of drugs dispensed because it only defines those covered entities.  *See* 42 U.S.C. § 256b(a)(4)(K). The directive to the Secretary to create a certification process does not discuss the scope of the grants either.  *See* 42 U.S.C. § 256b(a)(7)(A), (B). To be sure, the statute directs the Secretary to review the amount an entity expended on outpatient drugs for the preceding year to evaluate the entities subsequent purchases of outpatient drugs at discount prices, but the statute

- 14 -

does not direct the Secretary to limit the types of drugs eligible to be purchased based on whether they are within the scope of the entity's grant. *See id*. § 256b(a)(7)(B).

Plaintiffs' attempt to rely on HRSA's FAQs to limit 340B purchases is also unavailing. *See* Pl. Mot. at 31 (citing HRSA, 340B FAQs, https://www.hrsa.gov/opa/faqs). Through an ellipsis, Plaintiff's quote of the HRSA FAQ conveniently leaves out the most important part of the FAQ, that covered entities may dispense any 340B drugs to the extent it "aligns with the patient definition." *Id*. HRSA specifically rejected Plaintiff's drug-specific patient interpretation in that patient definition. 61 Fed. Reg. at 55,157 ("[w]e do not consider a limitation on which drug products a covered entity may purchase to be a reasonable component of the definition of covered entity 'patient'.") The HRSA patient definition does state that in order for an individual to qualify as a patient, that individual should be receiving a health care service or range of services from the covered entity that is consistent with the service or range of services for which grant funding has been provided to the covered entity. *Id*. However, this generic reference to receiving services consistent with the range of services of a grant, is not tied to the type of drugs dispensed. Once an individual qualifies as a patient, there is no limit to the types of 340B drugs that may be dispensed to that patient.

Congress created the 340B program to "enable [participating] entities to stretch scarce Federal resources as far as possible, reaching more eligible patients and providing more comprehensive services[.]" Medicaid Drug Rebate Amendments of 1992, H.R. Rep. No. 102-384, pt. 2, at 12, 102nd Cong. (1992). A broad prohibition on the types of drugs that can be purchased through the Program that Plaintiff advocates is at odds with this purpose. Further, it is well accepted that sexually transmitted diseases can cause various co-morbid conditions, such as cancer, neurological conditions, pregnancy complications, opportunistic infections, skin

- 15 -

conditions, mental health disorders, and organ damage. *See* Centers for Disease Control, Sexually Transmitted Infections Treatment Guidelines 2021, (July 23, 2021).[1] Just because an individual received a drug that could fall outside of the scope of a grant, is not evidence alone sufficient to establish that an individual is not a patient of the entity.

Even if the Court were to address Plaintiffs' concern about discount drug purchases for non-sexually transmitted disease related drugs, it is unclear what effect that would have on the certification process because as long as an entity received the 318 funding for the treatment and prevention of sexually transmitted diseases, the entity would be a covered entity within the meaning of the statute and able to purchase 340B discount drugs. Plaintiffs essentially seek an impermissible advisory opinion from this Court to allow Plaintiffs to deny an ambiguous category of purchases that do not appear in the complaint. *See Sierra Club v. Jackson*, 648 F.3d 848, 852 (D.C. Cir. 2011) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)) ("It has long been settled that a federal court has no authority to give opinions on . . . abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it."). Indeed, Plaintiffs have already issued mass notices to STD covered entities advising that Plaintiffs will no longer allow these entities to purchase their drugs at the 340B discounted rate. *See* AR 000113-00125.

The Court should decline to help Plaintiffs limit 340B purchases through an advisory opinion that would stretch much further than certification procedures for Sagebrush.

---

[1]

https://www.cdc.gov/mmwr/volumes/70/rr/rr7004a1.htm#:~:text=Methods,Assault%20and%20Abuse%20and%20STIs.

IV.     **Plaintiffs' Drug Diversion Concerns Are Speculative.**

Plaintiffs allege that HRSA certified and recertified Sagebrush entities that allegedly diverted 340B discount drugs to non-patients. *See* Pls.' Mot. at 32-37. But Section 256b(a)(7) directs HRSA to (1) collect information regarding previous purchases; and (2) obtain the relevant funding information that would qualify the entities for entry into the 340B Program. *See* 42 U.S.C. § 256b(a)(7). Nowhere on the face of the statute is there an additional requirement for HRSA to confirm before certification or recertification that an entity is not diverting drugs. Nor does the statute direct HRSA to verify and adjudicate every aspect of substantive eligibility before certification/recertification. It would be administratively difficult, if not impossible, to evaluate the thousands of covered entities requiring certification under Section 256b(a)(7) for diversion and duplicate discount violations prior to recertification. At most, Section 256b(a)(7) contemplates the review of future 340B purchases for diversion concerns, not the evaluation of previous purchases. *See* 42 U.S.C. § 256b(a)(7)(B) (requiring the collection of information regarding previous purchases to assist in the evaluation of "subsequent purchases of covered outpatient drugs at discounted prices.").

Significantly, the 340B statute has a carefully calibrated process for addressing violations of the 340B statute's prohibition against diverting 340B drugs to non-patients. Section 256b(a)(5)(B) contains the prohibition on diversion, and the Manufacturer Audit Guidelines and Dispute Resolution Process outlines the process for manufacturers who demonstrate "reasonable cause" to believe that a particular covered entity is diverting 340B discount drugs. *See* 42 U.S.C. § 256b(a)(5)(B); Manufacturer Audit Guidelines and Dispute Resolution Process, 61 Fed. Reg. 65,406 (Dec. 12, 1996). HRSA can only impose sanctions against a covered entity for drug diversion after an audit report containing findings and recommendations has been issued and the covered entity has been given at least thirty days to address the report and findings. *See* 42 U.S.C.

- 17 -

§ 256b(d)(2)(B)(v)(II). Moreover, a covered entity can only be removed from the 340B program for "systematic", "egregious", "knowing", and "intentional" violation of the prohibition on diversion. *Id*. The statute does not call for the removal of covered entities at certification for diversion concerns like Plaintiff implies, and certainly not upon speculation.

As Plaintiffs note, HRSA's guidance provides a patient for 340B purposes is (1) an individual the covered entity has established a relationship with such that the covered entity maintains records on the individual, (2) the individual receives health care services from a health care professional who is either employed by the covered entity or provides health care under contractual or other arrangements in a manner so that the care of the individual remains with the covered entity, and (3) the individual receives healthcare services from the covered entity consistent with the service or range of services for which grant funding has been provided to the covered entity. *See* Pls.' Mot. at 33 (quoting HRSA guidance at 61 Fed. Reg. at 55,157-58). Plaintiffs has not identified, and Defendant has no knowledge of, Sagebrush diverting 340B drugs to an individual that does not meet these requirements. Plaintiff uses Sagebrush's agreement with Healthnomic Partners LLC as an example of diversion, but this example is not enough for HRSA to remove Sagebrush from the program for drug diversion pursuant to Section 256b(d)(2)(B)(v)(II). *See* Pls.' Mot. at 35.

Significantly, Healthnomic Partners LLC is not one of the clinics or certifications included in the complaint. *See generally* Complaint (ECF No. 1). But even if it were included in this case, HRSA's guidance recognizes that healthcare is often provided through complex arrangements between different medical providers and therefore an individual may receive from a professional employed by the covered entity or from a professional who provides health care under contractual or other arrangements. 61 Fed. Reg. at 55,157-58. Plaintiffs' speculation that drug diversion is

- 18 -

occurring based on these contractual agreements is not enough. Congress required much for HRSA to remove a covered entity from the 340B program.

## V.      HRSA Does Not Certify Subgrantees.

Plaintiffs allege HRSA unlawfully certifies subgrantees based on a Nevada Notice of Award that listed only one Sagebrush site. *See* Pl. Mot. at 38-39. HRSA took action to remove the Sagebrush sites that claimed program eligibility based on this grant but were not listed as individual grant recipients. *See id.* Sagebrush, however, obtained an amended notice of award that listed each Sagebrush site individually. *See* AR132333. This one instance of a State health department omitting the individual sites does not establish "scam that Sagebrush has been running." Pls.' Mot. at 41. Moreover, at certification, the covered entity must provide the name, address, federal identification number, notice of funding (or grant) number, the nature of the funding, and the duration of the grant. *See* Sagebrush Britton Decl. at ¶ 5. HRSA only certifies individual entities that provide the required 318 funding information. Plaintiff does not identify one subgrantee that HRSA wrongfully certified.

\*      \*      \*

## CONCLUSION

For these reasons, the Court should grant summary judgment in Defendants' favor and deny Plaintiffs' motion for summary judgment.

Dated: April 24, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney


By: _____*/s/Kimberly A. Stratton*_____
KIMBERLY A. STRATTON
P.A. Bar #327725
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 417-4216
kimberly.stratton@usdoj.gov

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMGEN INC., et. al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>ROBERT F. KENNEDY, JR., Secretary of<br>Health and Human Services, et al,<br><br>        Defendants. | Civil Action No. 24-3571 (JEB) |

## [PROPOSED] ORDER

UPON CONSIDERATION of Plaintiffs' motion for summary judgment, Defendants'

cross-motion for summary judgment, and the entire record herein, it is hereby

ORDERED that Plaintiffs' motion is DENIED, and

ORDERED that Defendants' motion is GRANTED, and it is further

ORDERED that summary judgment is ENTERED in favor of Defendants.

SO ORDERED:

_____          _____
Date                                                     James E. Boasberg
                                                              Chief Judge, United States District Court